# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  | 100 EAST FIFTH STREET, ROOM 540 |  |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: July 26, 2017

Mr. Carson J. Tucker
Law Office
117 N. First Street
Suite 111
Ann Arbor, MI 48104

Re: Case No. 16-1636, *Kamel Kassem, et al v. Ocwen Loan Servicing, LLC, et al*
Originating Case No. : 2:14-cv-11143

Dear Counsel,

The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Roy G. Ford
Case Manager
Direct Dial No. 513-564-7016

cc: Mr. Robert Hugh Ellis
Mr. Richard J. Jancasz
Ms. Tamara Dykstra Koury
Mr. Thomas M. Schehr
Mr. David J. Weaver

Enclosure

Mandate to issue

<u>**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**</u>
File Name: 17a0440n.06

Case No. 16-1636

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 26, 2017
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| KAMEL KASSEM and JEHAN KASSEM, ) <br> ) <br> Plaintiffs-Appellants, ) <br> ) <br> v. ) <br> ) <br> ) <br> OCWEN LOAN SERVICING, LLC; BANK ) <br> OF AMERICA, N.A., ) <br> ) <br> Defendants-Appellees. ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |

BEFORE: ROGERS, COOK, and STRANCH, Circuit Judges.

COOK, Circuit Judge. Plaintiffs Kamel and Jehan Kassem (the "Kassems") seek to reverse the foreclosure of their home, claiming that their bank and loan servicer violated various state and federal laws. The district court dismissed their suit. We AFFIRM.

**I.**

**A. Defaulting on the mortgage**

In 2001, the Kassems obtained numerous loans to build their dream home in Bloomfield, Michigan. Four years later, they refinanced their outstanding debt using a $1.12 million mortgage, which they secured with a promissory note and a security interest in their home. Although they kept up with their monthly mortgage payments for several years, the Kassems stopped making payments when their adjustable interest rate hit 7.43% in 2008.

Case No. 16-1636, *Kassem v. Ocwen Servicing LLC, et al.*

### B. The mortgage assignments

Over the life of the mortgage loan, the security interest (and the accompanying mortgage note) changed hands twice. Prior to the transfers, American Home Mortgage Acceptance, Inc. ("AHMA") originated the loan for the Kassems. Through its nominee, Mortgage Electronic Registration Systems, Inc. ("MERS"), AHMA recorded its security interest in the Oakland County Register of Deeds on January 10, 2006.

After AHMA filed for bankruptcy, it transferred the note to Countrywide Bank ("Countrywide") in early 2008. Several months later, AHMA (again through MERS) recorded the first assignment, conveying its security interest to Countrywide.

Following its purchase of Countrywide in 2008, Bank of America, N.A. ("BOA"), took ownership of the note. Countrywide recorded a second assignment—this one transferring the security interest to BOA—in December 2011.

### C. Foreclosure and negotiations

For several years, the Kassems and BOA attempted to resolve the defaulted mortgage. For example, in August 2008, the Kassems tried to negotiate a loan modification or short sale with BOA to no avail.

BOA eventually began foreclosure-by-advertisement proceedings in November 2011, but postponed the actual foreclosure sale for more than two years. In the intervening time, Ocwen Loan Servicing, LLC ("Ocwen"), began servicing the mortgage on BOA's behalf. Ocwen offered to reduce the Kassems' mortgage balance by nearly $940,000 if they could make three trial payments. The Kassems refused the proposal, opting instead to send letters to Ocwen and BOA to ascertain the true balance and to whom (i.e., Ocwen or BOA) it was owed. These letters also disputed several mortgage fees. and noted that Ocwen and BOA gave different answers to

the question of how much the Kassems still owed on the mortgage. According to the Kassems, neither Ocwen nor BOA ultimately provided adequate answers.

### D. Procedural facts

BOA finally announced a foreclosure-sale date of March 4, 2014. The day before the sale, the Kassems sued Ocwen and BOA in Oakland County Circuit Court, successfully obtaining a temporary restraining order to halt the sale.

When BOA and Ocwen removed the Kassems' suit to federal court, the Kassems amended their complaint to list fourteen causes of action based on various alleged violations of federal and state statutes. After BOA moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), and Ocwen moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the district court dismissed all but one count against Ocwen and two against BOA. BOA completed a foreclosure sale shortly thereafter. The Kassems then voluntarily dismissed the two claims against BOA, and the district court granted summary judgment in favor of Ocwen on the remaining claim.

The Kassems timely appeal.

## II.

We review de novo both a district court's dismissal for failure to state a claim under Rule 12(b)(6) and its decision to grant judgment on the pleadings under Rule 12(c). *Northville Downs v. Granholm*, 622 F.3d 579, 585 (6th Cir. 2010) (citing *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008)).

The Kassems' four assertions of error are variations on a theme: they contend that the district court improperly denied them an opportunity for summary judgment or a jury trial to

show that neither defendant—but primarily BOA—can prove ownership of the security interest in the Kassems' mortgage. We evaluate each claimed error in turn.

### A. Converting the pleadings-based motions into summary-judgment motions

First, the Kassems argue that the district court should have converted the defendants' pleadings-based motions into summary-judgment motions as Federal Rule of Civil Procedure 12(d)[1] so requires and because the defendants presented mortgage-ownership documents of suspect "legitimacy." Both arguments fail.

As an initial matter, the Kassems never moved the district court to convert the defendants' motions to summary-judgment motions, nor did their responses to the defendants' motions raise the illegitimacy of the attached documents. The Kassems have therefore forfeited these objections on appeal. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).

Regardless of the forfeiture, the Kassems' arguments lack merit. Under a well-established exception to Rule 12(d), courts may consider documents attached to a Rule 12(b)(6) or 12(c) motion without converting either into a summary-judgment motion if the attached materials are: (i) "referred to in the plaintiff's complaint and are central to [the] claims" or (ii) "matters of public record." *McLaughlin v. CNX Gas Co., LLC*, 639 F. App'x 296, 298–99 (6th Cir. 2016) (internal quotation marks and citations omitted); *see also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

The documents here—the assignments transferring the security interest in the mortgage from AHMA to Countrywide to BOA—easily pass muster on either part of the test. First, the

---

[1] In their brief, the Kassems cite a pre-2007 version of Rule 12(d). We assume the Kassems intended to cite the current version of the rule (in effect at the time the Kassems filed suit) stating: "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

- 4 -

complaint refers to numerous defects in the assignments that undergird the Kassems' claim that BOA lacks proof that it holds the mortgage interest. *See Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364–65 (6th Cir. 2014). As for the matters-of-public-record exception, the assignments come straight from the Oakland County Register of Deeds. Thus, under either aspect of Rule 12(d) exception, the district court properly incorporated the assignments into its analysis of the pleadings.

With respect to the Kassems' charges of "illegitimacy," noticeably missing are allegations that the assignments were unauthentic, inaccurate, or otherwise unrepresentative of the public record—all reasons that would give a district court pause before relying on such documents. *See, e.g.*, *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (citations omitted); *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Rather, the Kassems use the lack-of-legitimacy argument to indirectly challenge the validity of the transfer underlying each assignment document. *See Smith v. Litton Loan Servicing, LP*, 517 F. App'x 395, 397–98 (6th Cir. 2013) ("While a plaintiff in a foreclosure case can challenge the existence of a record chain of title, [that] record [] is distinct from the validity of each underlying agreement in the chain of title."). As we explain in Section II.D, *infra*, however, the Kassems lack contractual standing to contest the merits of the assignments.

**B. Conversion from foreclosure by advertisement to judicial foreclosure**

Next, the Kassems argue that they are entitled to judicial foreclosure, reasoning that the district court should have treated their request for a jury trial as a request to convert the foreclosure by advertisement into a judicial foreclosure.[2] That argument also fails.

---

[2] The Kassems also argue that they have an absolute right to a jury trial under Michigan's constitution. But no case law supports this claim, nor does the right to a jury allow the Kassems to disregard the Federal Rules of Civil Procedure. *See, e.g.*, *Gardner*, 567 F. App'x at 362.

- 5 -

The Kassems concede that they did not include in their demand for relief a request for conversion of BOA's foreclosure by advertisement to a judicial foreclosure, nor did they move to amend their complaint to include such a request. In an attempt to circumvent this problem, the Kassems point out that they sought a jury trial in their complaint and asked for judicial foreclosure in their response to the defendants' motions. Yet neither tactic suffices to show that the complaint itself (i.e., the Kassems' pleading) includes a demand for conversion to judicial foreclosure.

Even if the Kassems had adequately sought judicial foreclosure, nowhere in their complaint, their response to the defendants' motions, or their appellate brief do they cite the appropriate statute for conversion to judicial foreclosure—Mich. Comp. Laws § 600.3205c(8) (2013)—let alone allege facts that would satisfy the statute. We discern no error here.

### C. Right to judicial foreclosure

Alternatively, the Kassems claim a right to judicial foreclosure on two grounds: (1) their filing of the complaint before the scheduled foreclosure sale and (2) BOA's failure to provide legitimate documentation of its security interest in the mortgage. Both arguments lack merit.

The Kassems cite *Schulthies v. Barron*, 167 N.W.2d 784, 785 n.1 (Mich. App. 1969) (per curiam), for the proposition that filing a complaint prior to a foreclosure-by-advertisement sale forces the court to commence a judicial foreclosure. But *Schulthies* says nothing of the sort; instead, it holds that a court cannot extend the statutory redemption period absent fraud or irregularity. *Id.* at 785.

---

Under Rules 12(b)(6) and 12(c), their complaint failed to present triable issues of fact with respect to the claims related to the mortgage assignments, and therefore dismissal of their claims prior to reaching a jury was warranted.

- 6 -

Moreover, the district court correctly held that BOA met the requirements under Mich. Comp. Laws § 600.3204(3) (2013) to prove ownership of the security interest. Section 600.3204(3) states that "[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale." We interpret the phrase "record chain of title" to mean the "documents that were filed in [a] County Register of Deeds' office." *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 100–01 (6th Cir. 2010). Here, the assignments from the Oakland County Register of Deeds' office show that on August 29, 2008, AHMA assigned its security interest to Countrywide, who in turn assigned its interest to BOA on December 27, 2011. *See id.* at 102. The record chain of title therefore unequivocally establishes BOA as the owner of the mortgage interest prior to its first attempt to commence a foreclosure by advertisement in February 2012.

### D. Challenging the mortgage assignments

Finally, the Kassems contest the chain of title by attacking the validity of the assignments. Among other things, the Kassems allege that: AHMA's assignment to Countrywide constituted "an illegal[] attempt[] to convey an interest out of [a] debtor's estate" because AHMA had filed for bankruptcy prior to the recording of the assignment; the AHMA-to-Countrywide assignment was "robo-signed," and thus illegitimate; and the Countrywide-to-BOA assignment included the signature of a person who allegedly was not a Countrywide employee at the time she signed it.

But as the district court correctly explains, the Kassems—a third party to the assignments—cannot hurdle their lack of contractual standing to challenge the alleged assignment defects unless they can "show that they were prejudiced by [BOA's] failure to comply with [§] 600.3204." *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 337 (Mich.

2012); *see also Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 254 (6th Cir. 2014) ("A person who is neither a party to the [assignment] contract nor in privity with the parties, and who is not a third-party beneficiary of the contract, is said to lack 'standing' . . . to challenge its validity."). "To demonstrate such prejudice, [plaintiffs] must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Kim*, 825 N.W.2d at 337. The quintessential example of prejudice is the danger of "double liability," where a plaintiff may be liable to multiple entities claiming ownership over the mortgage interest. *See, e.g.*, *Powell v. Bank of N.Y. Mellon*, 616 F. App'x 778, 782 (6th Cir. 2015) (finding no prejudice where homeowners had not shown a "risk that [they] would be required to pay the same debt twice."); *Livonia*, 399 F. App'x at 102 (same).

There is no concern of double liability here because the record chain of title reveals only a single owner: BOA. The Kassems have not alleged in their complaint that another entity can lay claim to the mortgage interest or challenge BOA's ownership. Nor have they alleged that "[they] would have been in any better position to keep the property absent the defect." *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 362 (6th Cir. 2013).

As a final argument, the Kassems quote the rule from *Livonia* that allows, in limited circumstances, a third party to an assignment to raise the defenses of "nonassignability of the instrument, assignee's lack of title, [or] a prior revocation of the assignment." *Livonia*, 399 F. App'x at 102 (citing 6A C.J.S. Assignments § 132 (2010)). Additionally, the Kassems seek refuge in this sentence from *Slorp*: "If Bank of America ha[s] no right to file the foreclosure action, it makes no difference whether [the homeowner] previously had defaulted on his mortgage." 587 F. App'x at 254.

*Livonia* provides no aid here. As we explained, "[o]bligors have standing to raise these [defenses] *because they cannot otherwise protect themselves from having to pay the same debt twice*." *Livonia*, 399 F. App'x at 102 (emphasis added); *see also Conlin*, 714 F.3d at 361–62 (citing *Kim*, 825 N.W.2d at 336–37). In other words, these defenses are available to plaintiffs insofar as they can prove prejudice under § 600.3204. The Kassems have not alleged any kind of prejudice.

The lone sentence from *Slorp* also fails to help the Kassems. Leaving aside the fact that the quotation comes from a section of the *Slorp* opinion analyzing Article-III standing rather than contractual standing, *Slorp* itself concerned whether BOA had statutory standing under Ohio's debt-collection and fraud laws, not Michigan's foreclosure laws. *See Slorp*, 587 F. App'x at 256 ("[T]o determine whether Slorp had standing to bring [claims under Ohio law], we look only to the language of those statutes. The principles outlined in *Livonia*[, which involve Mich. Comp. Laws § 600.3204,] are irrelevant here." (internal citation omitted)).

### III.

We AFFIRM.